

**Signed September 01, 2017.**

_____
**Ronald B. King**
**Chief United States Bankruptcy Judge**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 16-60352-RBK |
| | § | |
| KELLY DIANE PUSTEJOVSKY, | § | |
| | § | |
| DEBTOR. | § | CHAPTER 7 |
| | § | |

**OPINION**

The issue before the Court is whether a chapter 13 debtor has an absolute right to dismiss a case under § 1307(b) of the Bankruptcy Code where the debtor has acted in bad faith and failed to disclose property of the estate. After a voluntary dismissal of this case, the chapter 13 trustee moved to vacate the order of dismissal and reinstate the case. It is the opinion of the Court that the right to dismiss under § 1307(b) is conditional, and therefore the dismissal should be vacated and the case converted to chapter 7, *sua sponte*.

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 154 and 1334. These are core proceedings within the meaning of 28 U.S.C. § 157(b)(2)(A). Venue is proper under 28 U.S.C. § 1408. These are the Court's findings of facts and conclusions of law, pursuant to FED. R. BANKR. P. 7052 and 9014.

Joe Pustejovsky, Jr., tragically died in a fertilizer storage explosion on April 17, 2013, in the town of West, Texas. His widow ("the Debtor") and a minor child from a prior marriage survived him. After his death, the community provided donations to the Debtor, the decedent's son, and the Debtor's family. The Debtor also obtained proceeds from the decedent's life insurance. Between the donations and life insurance proceeds, the Debtor received approximately $700,000. The Debtor spent all the money without accounting for property of the decedent and funds donated for the benefit of the decedent's minor child, a child who resided with his biological mother after his father's death.

Mr. Pustejovsky died intestate. Under TEX. EST. CODE ANN. §§ 201.002–201.003 (West 2014), two-thirds of the decedent's separate property and half of the community property passed to his son. On April 27, 2016, the decedent's father was appointed as administrator of the probate estate, and he requested an accounting from the Debtor for property owned by the decedent. Nine days later, the Debtor filed for bankruptcy protection under chapter 13, which stayed the probate claims against the Debtor and prevented the administrator from obtaining the Debtor's financial records.

There were serious problems within the bankruptcy case. In her first and amended schedules, the Debtor failed to list multiple prepetition assets, including a jet ski, a trailer, and storage space. More importantly, although the Debtor listed "potential recovery of damages related to West explosion" as an asset, she failed to disclose a *pending* prepetition wrongful death lawsuit relating to the death of Mr. Pustejovsky. In her statement of financial affairs and under penalty of perjury, she stated she was not involved in any lawsuits within one year prior to the chapter 13 filing. She also testified that she lent money to several friends, but did not list any gifts or potential

2

causes of action against third parties in her schedules. Inexplicably, the Debtor failed to list the probate estate administrator or the decedent's son as a creditor.

In addition to failing to schedule or disclose the pending wrongful death lawsuit, the Debtor never filed an application to employ special counsel for up to four law firms, all of which were retained and signed prepetition contracts with the Debtor. These attorneys were aware of the bankruptcy case and consulted with the Debtor's bankruptcy attorney, yet they never obtained approval for employment from the Court. They apparently attempted to circumvent the Court's authority by bypassing the Debtor's bankruptcy attorney and by advising the Debtor what to do within the bankruptcy case.

There were also problems with documentation provided to the chapter 13 trustee and plaintiffs in two adversary proceedings filed against the Debtor by the probate estate administrator and by the next friend of the decedent's son. The problems were primarily due to the Debtor failing to produce bank records, deposit records, wire transfer records, copies of checks, proof of insurance, documentation of the decedent's life insurance, records of vehicle transfers, and records of bills of sale for assets claimed by the probate estate administrator and the next friend of the decedent's child. The Court compelled the Debtor to produce all documents on October 20, 2016, but seven months later, the trustee and adversary proceeding plaintiffs still had not received a number of documents.

The Debtor created further problems by never presenting a confirmable chapter 13 plan. On July 20, 2016, confirmation of the first plan was denied. The Court sustained the trustee's objection to confirmation and issued an order instructing the Debtor to file a confirmable plan within a month or the case would be converted or dismissed. Ten months later, after extensive delays, the plan was still not confirmable because the Debtor was two months behind on trustee

3

payments, her schedules were not complete, and the amended plan did not provide any of the necessary amendments. Moreover, during this period the Debtor failed to appear at multiple confirmation hearings.

On March 28, 2017, after considering the multiple deficiencies, the Court granted the Debtor's request for one more extension in order to provide a feasible plan. The Debtor's extension request was based upon her knowledge of a pending settlement offer by one defendant, negotiated by her personal injury lawyers for her undisclosed wrongful death lawsuit, but without the knowledge or approval of the Court. Her plan was to keep the automatic stay in place until the settlement was consummated. One day before the final confirmation hearing, and the day she was supposed to accept the settlement offer, the Debtor filed a motion to dismiss her case and the Court, unaware of the negotiated settlement, granted the motion. The Debtor did not request approval of a compromise and settlement from the Court, nor did she disclose the settlement in her motion to dismiss. The trustee and the adversary proceeding plaintiffs objected to the dismissal of the case and requested that the case be reinstated as a chapter 13 case. At the hearing on the motion to reinstate the case, the Debtor testified that she and her personal injury lawyers had agreed to a $780,000 settlement against one defendant. She further testified that her non-court approved lawyers told her it was permissible to dismiss her case now that they had reached a settlement. Debtor's bankruptcy counsel asserted that § 1307(b) provides an absolute right to dismissal. The Court disagreed, reinstated the case, and converted it to chapter 7, *sua sponte*. Although the Debtor initially had a right to dismiss her chapter 13 case, her actions forfeited that right.

Under 11 U.S.C. § 105(a) a bankruptcy court may "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of" the Code. Moreover, the court "may also possess inherent power . . . to sanction abusive litigation practices" so long as the court does

4

not act contrary to statutory provisions. ***Law v. Siegel***, 134 S. Ct. 1188, 1191 (2014) (quoting ***Marrama v. Citizens Bank of Mass.***, 549 U.S. 365, 375–76 (2007)) (citations omitted). The applicable provisions for dismissal or conversion under chapter 13 are 11 U.S.C. § 1307(b)–(c):

> (b) On request of the debtor at any time, if the case has not been converted under section 706, 1112, or 1208 of this title, the court shall dismiss a case under this chapter. Any waiver of the right to dismiss under this subsection is unenforceable.
> (c) Except as provided in subsection (f) of this section, on request of any party in interest or the United States trustee and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of this title, or may dismiss a case under this chapter, whichever is in the best interest of creditors and the estate, for cause, including—
>   (1) Unreasonable delay by the debtor that is prejudicial to creditors;
>   (2) Nonpayment of any fees and charges required under chapter 123 of title 28;
>   (3) Failure to file a plan timely under section 1321 of this title;
>   (4) Failure to commence making timely payments under section 1326 of this title;
>   (5) Denial of confirmation of a plan under section 1325 of this title and denial of a request made for additional time for fling another plan or a modification of a plan;
>   (6) Material default by the debtor with respect to a term of a confirmed plan . . . .

When the language in a statute is clear, courts must apply the plain meaning of the terms unless doing so creates absurd results. ***U.S. v. Ron Pair Enters. Inc.***, 489 U.S. 235, 242 (1989). Further, in statutory construction, courts must "give effect, if possible, to every clause and word of a statute" and "a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." ***Duncan v. Walker***, 533 U.S. 167, 174 (2001) (citations omitted). Section 1307(b) is analogous to § 707(a), which states that the court "may dismiss a case under this chapter only after notice and a hearing and only for

5

cause . . . ." Because § 707 uses the word *may* and § 1307 uses the word *shall*, some courts find the word *shall* to be the determinative factor within § 1307.

This Court finds this statutory interpretation to be inconsistent with the Code's provisions. Interpreting the word *shall* as mandatory in § 1307(b), without a bad faith exception, would create absurd results because sections of the Code must be read together and harmonized. If there is a motion to convert, or an order of the court denying confirmation and requiring a new plan, reading the word *shall* to provide an absolute right to dismissal under § 1306(b) would render § 1307(c) meaningless. *See* **Foster v. N. Tex. Prod. Credit Ass'n (In re Foster)**, 121 B.R. 961, 961 (N.D. Tex. 1990) ("When the facts show that the debtors have abused the legal process and the bankruptcy process through fraud, the bankruptcy court has authority to convert . . . even though the debtors have filed a motion to dismiss . . . .") (chapter 12 case).

The reasoning of the Supreme Court of the United States in *Marrama v. Citizens Bank of Massachusetts* supports this Court's rationale. In *Marrama*, the Court noted that prepetition bad-faith conduct by debtors constituted cause for denial of a motion to convert under § 706(a) because bad-faith debtors do not belong to "the class of 'honest but unfortunate debtors' that the bankruptcy laws were enacted to protect." *Marrama*, 549 U.S. at 374 (quoting **Grogan v. Garner**, 498 U.S. 279, 287 (1991)). In *Marrama*, the debtor filed inaccurate schedules and denied that he transferred real property to a trust within a year of filing for chapter 7. *Id.* at 368–69. After the trustee sought to recover the property as an asset of the estate, the debtor sought conversion under § 706(a). *Id.* Despite the debtor claiming an absolute right to convert, the Supreme Court determined that the right to convert was subject to a bad faith exception, which allows a court to dismiss or convert a case for "cause." *Id.* at 374–75. The Court reasoned that the bankruptcy judge's broad authority to take any necessary or appropriate action to prevent abuse "is surely adequate to [deny conversion

6

when] the allowance of equivalent relief may provide a debtor with an opportunity to take action prejudicial to creditors." *Id.* at 375.

Courts are divided over the interplay between § 1307(b) and § 1307(c). Some courts hold that § 1307(c) limits a chapter 13 debtor's right to voluntarily dismiss a case where bad faith, improper conduct, or fraud by the debtor is established. *In re Jacobsen*, 609 F.3d 647, 662 (5th Cir. 2010) (allowing conversion when a debtor files a motion to dismiss in response to a trustee's motion to convert); *Molitor v. Edison (In re Molitor)*, 76 F.3d 218, 220 (8th Cir. 1996) (converting a case to prevent bankruptcy abuse despite debtor's wish to dismiss). Other courts find voluntary dismissal an absolute right because chapter 13 is voluntary. In their view, if the right to dismiss is not absolute, a chapter 13 case would become involuntary servitude. *See In re Armstrong*, 408 B.R. 559, 571 (Bankr. E.D.N.Y. 2009). In the Fifth Circuit, courts agree that a right to dismissal is subject to a bad faith exception when the trustee has filed a motion to convert. *See In re Jacobsen*, 378 B.R. 805, 810–11 (Bankr. E.D. Tex. 2007), *aff'd*, 609 F.3d 647 (5th Cir. 2010) (concluding that the chapter 13 debtor's right to dismiss is not absolute, but rather subject to a bad faith exception); *In re Fonke*, 310 B.R. 809, 818 (Bankr. S.D. Tex. 2004); *Cobb v. Cobb (In re Cobb)*, 2000 WL 17840, at *3 (E.D. La. Jan. 11, 2000); *Foster*, 121 B.R. at 961.

The equities in this case support interpreting § 1307(b) as permissive rather than absolute, even without the trustee having filed a motion to convert. Section 1307(c) contains eleven factors that constitute "cause" for conversion or dismissal, including "unreasonable delay by the debtor that is prejudicial to creditors" and "failure to commence making timely payments under section 1326 . . . ." § 1307(c)(1), (c)(4). Moreover, lack of good faith constitutes "cause." *Molitor*, 76 F.3d at 220; *Toles v. Powers*, 1999 WL 1261453, at *3 (N.D. Tex. Dec. 28, 1999). When evaluating bad faith, courts use a totality of the circumstances analysis on a case-by-case basis. *Id.* Here, the

7

Debtor has been far from forthcoming. The Debtor's actions establish cause for converting her chapter 13 case to a chapter 7 case.

Since the Debtor's initial plan was not confirmed, the Debtor was on notice that her case could be dismissed or converted if an amended plan was not confirmed. After multiple plan confirmation hearings, the Debtor was unable to submit a feasible plan and kept asking the Court to reset confirmation as a delay tactic. She failed to schedule assets and disclose her wrongful death lawsuit in her schedules. The Debtor failed to seek approval to employ special counsel and delayed producing bank records, wire transfer records, copies of checks, and proof of insurance. She failed to produce discovery to the probate case administrator and the next friend of the decedent's child, which ultimately delayed an accounting and diverted inherited property, donations, and assistance away from the decedent's son. The Debtor also failed to list the probate estate administrator and the decedent's son as creditors. Allowing an absolute right to dismissal in this case would "afford an abusive debtor an escape hatch," and would not be in the best interest of the creditors. **Jacobson**, 609 F.3d at 660.

Finally, the Court finds that it can *sua sponte* convert the case to chapter 7. *Cf.* **Hammers v. IRS (In re Hammers)**, 988 F.2d 32, 34–35 (5th Cir. 1993) ("While the Code does not expressly prescribe for *sua sponte* dismissal or conversion . . . the 1986 amendment to section 105(a) accommodates such a result."); **Toles**, 1999 WL 1261453, at *3.

For these reasons, the Court finds that there is a bad faith exception to a debtor's right to dismiss a chapter 13 case. Under inherent powers pursuant to § 105, § 1307, and Fifth Circuit case authority, the court finds cause sufficient to convert the Debtor's case to chapter 7. Separate orders have been entered.

###